```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF KENTUCKY
                    CENTRAL DIVISION at LEXINGTON
```

MIMI LOAN, et al.                )
                                 )
      Plaintiffs,                )   Civil Action No. 5:08-38-JMH
                                 )
v.                               )
                                 )
PRUDENTIAL INSURANCE COMPANY     )   **MEMORANDUM OPINION**
OF AMERICA,                      )         **AND ORDER**
                                 )
      Defendant.                 )
                                 )

                  **      **      **      **      **

Plaintiffs filed this action seeking review of the denial of accidental death benefits under a policy with Defendant Prudential Insurance Company ("Prudential"). This matter is before the Court on Plaintiffs' motion for judgment in opposition to the plan administrator's decision [Record No. 25]. Defendant has responded [Record No. 29] and Plaintiff has replied [Record No. 30]. The matter is now ripe for review. Having reviewed the administrative record and being otherwise sufficiently advised, the Court will deny Plaintiffs' motion and affirm the Plan Administrator's decision.

**I. BACKGROUND**

On June 29, 2006, Ernest Hollis Loan, Jr., age 53, fell down two flights of stairs trying to descend his basement steps after consuming three glasses of wine. At the time, Mr. Loan was taking OTC cold medication and Clonazepam, prescribed by a doctor to treat depression. Alcohol consumption is counter-indicated for both

medications. Mr. Loan suffered blunt force head trauma as a result of the fall. Roughly two hours after the fall, Mr. Loan's plasma alcohol level was 178 mg/dL. On July 6, 2006, Mr. Loan succumbed to his injuries.

Plaintiffs Mimi Loan, Amanda Loan Huddle, and Ashley Loan (collectively, "Plaintiffs") are beneficiaries under Mr. Loan's group accidental death insurance. The group policy is with Defendant Prudential Insurance through Mr. Loan's employer, Bayer Corporation, and would pay a total of $300,000. Mimi submitted a claim for the full policy amount following Mr. Loan's death. Under the policy, Prudential acts as Claims Administrator with "sole discretion to interpret the terms of the Group Contract, to make factual findings, and to determine eligibility for benefits." Prudential denied the claim, citing Mr. Loan's intoxication at the time of the injury. Plaintiffs appealed this decision but were again denied, in part, for failing to provide additional supporting documentation.

The policy provides:

Benefits for accidental Loss are payable only if all these conditions are met:
    (1) The person sustains an accidental bodily injury while a Covered Person.
    (2) The Loss results directly from that Injury and from no other cause.

. . .

A Loss is **not covered** if it results from any of these:
. . .

>      (9) Being **legally intoxicated** or under the influence of any narcotic unless administered or consumed on the advice of a Doctor. . . .

AR at 00024 and 00026 (emphasis added).

## II. STANDARD OF REVIEW

This action is governed by ERISA's civil enforcement system, 29 U.S.C. § 1132(a)(1)(B). The parties do not dispute that the administrator has discretion under the policy to determine eligibility. "[W]here [a] plan clearly confers discretion upon the administrator to determine eligibility or construe the plan's provisions, the determination is reviewed under the 'arbitrary and capricious' standard." *Hunter v. Caliber System, Inc.*, 220 F.3d 702, 710 (6th Cir. 2000) (citing *Wells v. United States Steel & Carnegie Pension Fund, Inc.*, 950 F.2d 1244, 1248 (6th Cir. 1991)). Where a plan gives discretion to an administrator operating under a conflict of interest, that conflict is weighed as a factor in deciding whether the administrator's decision was arbitrary and capricious. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. ---, 128 S. Ct. 2343, 2348 (2008), *aff'g Glenn v. MetLife*, 461 F.3d 660 (6th Cir. 2006). A conflict of interest exists where a plan administrator "both evaluates claims for benefits and pays benefits claims." *Glenn*, 128 S. Ct. at 2348.

The arbitrary and capricious standard is the least demanding form of judicial review of administrative action. *Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000). The Court must

-3-

decide whether the plan administrator's decision was "rational in light of the plan's provisions." *Id.* (quoting *Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir. 1988)). "'[W]hen it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious.'" *Id.* (quoting *Davis v. Ky. Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989)). In reviewing the administrator's decision, the Court may only consider evidence available to the plan administrator at the time the final decision was made. *Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997) (quoting *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 381 (6th Cir. 1996)). With these principles in mind, the Court will review Plaintiffs' arguments.

**III. ANALYSIS**

Plaintiffs argue that Prudential denied their claim without a "full and fair review." First, Plaintiffs believe the denial of their claim was arbitrary and capricious because certain medical records were absent from the administrative record. Second, Plaintiffs challenge the accuracy and methodology of the ethanol testing of Mr. Loan's blood. Third, Plaintiffs contend that Prudential should have hired an independent forensic toxicologist to review Plaintiffs' claim for benefits and adopted other safeguards to ensure an objective assessment. Finally, Plaintiffs argue that Prudential's denial is unsupported by evidence based on

-4-

recurring suppositions in the record that intoxication directly caused the accident. Plaintiffs' arguments ultimately fail for the reasons that follow.

A. Missing Medical Records

Plaintiffs' argument that Prudential failed to fully review Mr. Loan's medical records from the emergency room is not supported by evidence. As part of Plaintiffs' claim for benefits, Prudential requested a HIPAA authorization from Mimi in order to examine Mr. Loan's relevant medical records between the date of the accident, June 29, 2006, and the date of his death, July 7, 2006. The only records relating to Mr. Loan's emergency room treatment were summaries of treatment. Plaintiffs intimate the missing records support their claim that the hospital's treatment of Mr. Loan affected his blood ethanol levels and created a falsely elevated level. The missing records could be explained by the hospital not producing them, the records not existing at all, or Prudential concealing them. However, Plaintiffs failed to supplement the medical records before Prudential through their own records request. Moreover, Plaintiffs did not produce additional evidence suggesting that the hospital failed to fully comply with the initial medical records request made on August 22, 2006 or that Prudential wrongly concealed these records. It cannot be said that Prudential acted arbitrarily and capriciously because Prudential based its denial on uncontroverted evidence in the record, namely

the toxicology report and discharge summary from the hospital.

B.  Timing and Methodology of Blood Ethanol Testing

Plaintiffs' argument that the denial was arbitrary and capricious because of faulty blood ethanol testing fails in light of the administrative record. As stated above, Prudential denied Plaintiffs' benefits claim based on the exclusion of losses resulting from legal intoxication. Plaintiffs take issue with both the factual determination of Mr. Loan's intoxication and the legal standard Prudential applied.

Prudential denied the claims because Mr. Loan's plasma ethanol level was 178 mg/dL. In their appeal, Plaintiffs asked for an explanation of the methodology used and noted that whole blood ethanol levels were the standard measure for determining intoxication in Kentucky. Mr. Loan's wife Mimi, a National Director for Quest Diagnostics, Inc., believed Mr. Loan's ethanol levels to be "falsely elevated," but she offered no additional supporting documentation in her appeal, and Prudential again denied the benefits claim. Despite the lack of supporting evidence from Plaintiffs, Prudential again reviewed Plaintiffs' claim for benefits in light of the use of plasma ethanol levels instead of whole blood ethanol levels. In denying Plaintiffs' appeal, Dr. Kowalski, a physician and medical director with Prudential, explained that plasma ethanol levels are converted into whole blood ethanol levels using a conversion factor between 1.14 and 1.22. He

took the factor most favorable to Plaintiffs, 1.22, and found that Mr. Loan's whole blood ethanol level was 146 mg/dL, roughly 1.8 times the legal limit in Kentucky of 80 mg/dL. Plaintiffs did not supply the administrator with any additional evidence to dispute the methodology or accuracy of the testing done at the hospital. In fact, his blood ethanol level remained at nearly twice the legal limit two hours after the accident, one could infer that his blood alcohol level at the time of the accident was higher because his body had less time to metabolize the alcohol. Prudential's denial was reasonable given the evidence in the record.

Plaintiffs argue that the phrase "legally intoxicated" is ambiguous and that Kentucky's definition under its motor vehicle intoxication statute should not be used in this case. In Kentucky, a motor vehicle operator is legally intoxicated if his blood alcohol concentration is 0.08% or more (80 mg/dL), measured by blood or breath within two hours of operation of a motor vehicle. KRS § 189A.010. "In interpreting a plan, the administrator must adhere to the plain meaning of its language as it would be construed by an ordinary person." *Morgan v. SKF USA, Inc.*, 385 F.3d 989, 992 (6th Cir. 2004). A plan administrator's rational interpretation of a plan must be accepted despite an "equally rational interpretation offered by the participants." *Id.* If there are ambiguities in the plan's language, then "any ambiguities in the language of the plan [must] be construed strictly against

-7-

the drafter of the plan." *Regents of the Univ. of Mich. v. Employees of Agency Rent-a-Car Hosp. Ass'n*, 122 F.3d 336, 340 (6th Cir. 1997). Under Kentucky law, ambiguities in insurance contracts are "liberally construed so as to afford coverage." *Healthwise of Ky., Ltd. v. Anglin*, 956 S.W.2d 213, 217 (Ky. 1997) (citing *Wolford v. Wolford*, 662 S.W.2d 835, 838 (Ky. 1984)); *see Regents of the Univ. of Mich.*, 122 F.3d at 339 (federal court may take direction from state in which it sits).

In this case, Plaintiffs believe the Kentucky intoxication statute should not apply because Mr. Loan was in his home. Plaintiffs argue that this Court should adopt the interpretation posited by the Kentucky Supreme Court in *Anglin*. In that case, the Kentucky Supreme Court found exclusion provisions relating to intoxication to be ambiguous based on the existence of various statutory definitions for the phrase "legal intoxication." *Anglin*, 956 S.W.2d at 217-18. However, the Court finds no such ambiguity here, and Prudential's interpretation of the excluding provision is rational. Unlike the Kentucky Supreme Court, this Court must first look to whether Prudential's interpretation of plan provisions meets with its plain meaning, based on an ordinary person's understanding. An ordinary person in Kentucky would likely agree with Prudential that "legally intoxicated" refers to the 0.08 BAC limit and, contrary to Plaintiffs' assertions, is probably unaware of any conflicting definitions under Kentucky law. While the exact

-8-

limit may vary from state to state, the popular meaning of legal intoxication has to be the level of blood alcohol proscribed by a state's DUI statute. Prudential's use of the legal limits established by Kentucky's driving statute to determine the meaning of "legally intoxicated" is a rational interpretation of the plan, and the term is not ambiguous.

C. Outside Review and Alleged Lack of Objectivity

Plaintiffs' arguments that Prudential failed to hire an independent forensic toxicologist to review their claim and that Prudential's reviewing physicians were not objective when reviewing their claim also fail. First, the insurance policy terms did not require Prudential to hire an independent toxicologist. Second, the Plaintiffs' lack of supporting evidence left Prudential's reviewing physicians with little on which to base approval of the claim. Plaintiffs have supplied no additional evidence that might warrant outside expertise. Plaintiff implies the denial was predetermined based on Prudential's reviewing physicians using phrases such as "please review for denial" and "disallow on the system." However, the physician notes referenced were from after Plaintiffs' appeal and could be read as a directive that each physician review a claim for benefits that was previously denied. Additionally, the reviewing doctors supported their decision to uphold the denial by noting Mr. Loan's blood ethanol level and addressing Mimi's concerns regarding the use of plasma ethanol

levels. Prudential's decision not to use an independent toxicologist and its review of Plaintiffs' appeal were not arbitrary and capricious.

D. Alleged Use of Suppositions to Support Denial

Plaintiffs' argument that Prudential's denial was unsupported by evidence fails. Plaintiffs claim that Prudential justified its denial of the claim based on recurring suppositions in the record that intoxication directly caused the accident. However, Plaintiffs have failed to provide supporting evidence to dispute the hospital's blood ethanol level tests or otherwise explain the circumstances leading to Mr. Loan's accident and death. The evidence Plaintiffs did supply undercut their claim. The Plaintiffs admitted that Mr. Loan consumed three glasses of wine and that he was taking drugs counter-indicated with alcohol use at the time of the accident. Plaintiffs offered no evidence that some other cause directly resulted in Mr. Loan's death. Instead, they generally attacked the validity of the ethanol test. Prudential's proffered justification for denying the claim was permissibly reasonable in light of the evidence before it, and was not arbitrary and capricious.

**IV. CONCLUSION**

Examining the administrative record for actions or omissions by Prudential that case doubt on the fullness of its evaluation, the Court cannot conclude that Prudential acted in an arbitrary and

-10-

capricious manner when it denied Plaintiffs' claim for accidental death benefits.  Plaintiffs simply have not offered any evidence upon which Prudential can base an approval of their claim. Prudential's reading of the phrase "legally intoxicated" is the plain meaning of that phrase to an ordinary person.

Prudential has offered a reasonable explanation, based on evidence in the record, for its decision to deny Plaintiffs' claim for accidental death benefits and Plaintiffs' claims to the contrary are not persuasive.

Accordingly, **IT IS ORDERED** that Defendant's denial of benefits to Plaintiffs be, and same hereby is, **AFFIRMED**.

This the 4th day of December, 2008.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge