UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**LEXINGTON**

| | | |
|---|---|---|
| MIMI LOAN; ASHLEY LOAN; and AMANDA LOAN,<br><br>Plaintiffs,<br><br>v.<br><br>THE PRUDENTIAL INSURANCE COMPANY OF AMERICA,<br><br>Defendant. | ) | Civil Action No. 5:08-cv-38-JMH<br><br>**MEMORANDUM OPINION AND ORDER** |

** ** ** ** **

Plaintiffs have filed a Proposed Judgment [Record No. 45-1] and also made a Motion for Prejudgment Interest and Forwarding Plaintiffs Attorneys' Fees Under 29 U.S.C. § 1132(g)(1) [Record No. 46], later amended [Record No. 51], to which Defendant has filed timely Responses [Record Nos. 48 and 52]; and Plaintiffs have also filed a Reply [Record No. 49]. This matter is now ripe for decision.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

On the night of June 29, 2006, Ernest Loan fell down two flights of stairs to the basement after drinking three glasses of wine. [Record No. 36, p. 2]; *Loan v. Prudential Ins. Co. of Am.*, 370 F. App'x 592, 593 (6th Cir. 2010). Mr. Loan went to the hospital that evening and spent almost a week in intensive care before passing away as a result of blunt force head trauma resulting from his fall. [Record No. 36, p. 2]; *Loan*, 370 F. App'x

at 593. A toxicology report showed his plasma alcohol level at 178 mg/dL. [Record No. 36, p. 2]; *Loan*, 370 F. App’x at 593. Loan’s widow and two children, Plaintiffs Mimi Loan, Ashley Loan and Amanda Loan, attempted to collect on Mr. Loan’s group accidental insurance policy issued by Defendant, The Prudential Insurance Company. [Record No. 36, p. 2]; *Loan*, 370 F. App’x at 593.

Defendant, however, denied the claim as Loan’s policy did not cover deaths resulting from “[b]eing legally intoxicated.” [Record No. 36, p. 2-3]; *Loan*, 370 F. App’x at 593. In both the initial review and appeal of the initial decision, Defendant “used in-house doctors that were not experts in toxicology to review the toxicology report [that showed a plasma alcohol level of 178 mg/dL] performed on the decedent.” [Record No. 36, p. 3]; *Loan*, 370 F. App’x at 594. Based on this determination, Defendant concluded that Mr. Loan’s blood alcohol level at the time of his fall was .146 percent or “approximately 1.8 times the typical driving limit in most states, which is 80 mg/dL or .08 percent.” [Record No. 36, p. 3]; *Loan*, 370 F. App’x at 594.

In its order of December 14, 2008, this Court affirmed the denial of benefits by Defendant to Plaintiffs. [Record No. 32]. Plaintiffs appealed this Court’s decision four days later to the Sixth Circuit. [Record No. 33]. On March 18, 2010, the Sixth Circuit vacated this Court’s order of December 14, 2008 and remanded the case back to this Court to again decide whether to

affirm the denial of benefits by Defendant. [Record No. 36, p. 13], *Loan*, 370 F. App'x at 599. In doing so, the Sixth Circuit held the term "legally intoxicated" was ambiguous and that the definition found in Kentucky's public intoxication statute applied. [Record No. 36, p. 5-8]; *Loan*, 370 F. App'x at 595-96. Furthermore, the Sixth Circuit held that Defendant did not perform a full and fair review of Plaintiffs' claim since it employed in-house doctors, as opposed to outside toxicology experts, to review Plaintiffs' claim in determining the extent of Mr. Loan's intoxication. [Record No. 36, p. 8-13]; *Loan*, 370 F. App'x at 596-99. Upon remand, therefore, the Court, in its order of November 30, 2010, granted Plaintiffs' Motion for Judgment and ordered Plaintiffs to file a proposed judgment and motion, which was followed by appropriate responses and replies by the parties. [Record No. 44]; *see also* [Record No. 45-52].

**II. THE COURT SHALL AWARD PLAINTIFFS PREJUDGMENT AND POST-JUDGMENT INTEREST.**

While Defendant argues that the awarding of prejudgment interest is within the Court's discretion and ERISA does not mandate the award, this Court finds that there are general equitable principles upon which to base its decision to award prejudgment interest to Plaintiffs. *See Perrin v. Hartford Life Ins. Co.*, No. 06-cv-182-JBC, 2008 WL 2705451, at *2 (E.D. Ky. July 7, 2008). The Sixth Circuit has held that "[a]wards of prejudgment interest pursuant to § 1132(a)(1)(B) . . . are not punitive, but

simply compensate a beneficiary for the lost interest value of money wrongly withheld from him or her." *Ford v. Uniroyal Pension Plan*, 154 F.3d 613, 618 (6th Cir. 1998); *see also* 29 U.S.C. § 1132(a)(1)(B) ("A civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan."). Thus, "a finding of wrongdoing by the defendant is not a prerequisite to such an award." *Tiemeyer v. Cmty. Mut. Ins. Co.*, 8 F.3d 1094, 1102 (6th Cir. 1993) (quoting *Drennan v. GM Corp.*, 977 F.2d 246, 253 (6th Cir. 1992)). Rather, the Sixth Circuit only requires a showing that the administrator "incorrectly withheld benefits." *Shelby Cnty. Health Care Corp. v. Majestic Star Casino*, 582 F.3d 355, 376 (6th Cir. 2009). In this case, Defendants wrongfully withheld from Plaintiffs the benefit properly owed them more than four years ago. *See* [Record No. 44]. While Defendant argues it did not delay the judicial process, this is not the standard used to determine whether prejudgment interest should be awarded. Applying the proper standard, this Court will grant Plaintiffs' motion for prejudgment interest.

Plaintiffs have also made a motion for post-judgment interest pursuant to 28 U.S.C. § 1961. [Record No. 49]. Defendant agrees that any award of post-judgment interest is determined by reference to statute. [Record No. 48]. As a result, the Court shall award post-judgment interest "from the date of the entry of the judgment"

to Plaintiffs. 28 U.S.C. § 1961; *see S. Elec. Health Fund v. Kelley*, 308 F. Supp. 2d 847, 871 (M.D. Tenn. 2003).

**III. THE COURT SHALL AWARD PLAINTIFFS ATTORNEYS' FEES.**

While no presumption to award attorneys' fees under the ERISA statute exists, the Court has broad discretion in making such an award under 29 U.S.C. § 1132(g). *Maurer v. Joy Techs., Inc.*, 212 f.3d 907, 919 (6th Cir. 2000) (citations omitted). The Sixth Circuit has held the following five factors as relevant to this Court's determination whether to award fees:

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorneys' fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

*Sec'y of Dep't of Labor v. King*, 775 F.2d 666, 669 (6th Cir. 1985). None of these factors are determinative on their own. *Maurer*, 212 F.3d at 919. Rather, this Court will consider all of the so-called "*King* factors" in determining whether Plaintiffs are entitled to attorneys' fees.

**A. Defendant acted with a high degree of culpability in denying Plaintiffs' claim.**

Defendant's denial of Plaintiffs' claim relying on known ambiguous language and doctors with a conflict of interest show

Defendant acted in bad faith. A decision that "was erroneous, even arbitrary [does not necessarily] evidence a degree of culpability approaching bad faith." *Folitce v. Guardsman*, 98 F.3d 933, 937 (6th Cir. 1996). However, a plan administrator is "culpable where the administrator terminated benefits based primarily on the opinions of doctors employed by the company's own claim department." *Gaeth v. Hartford Life Ins. Co.*, 538 F.3d 524, 530 (6th Cir. 2008). Defendant correctly argues that their reliance on the known ambiguous provision in the insurance policy does not, on its own, constitute bad faith.[1] Combined with Defendant's failure to seek outside evaluations, however, Plaintiffs have shown that Defendant exhibited a high degree of culpability.

Defendant relied on a blood serum test, which Plaintiffs claim was unreliable. [Record No. 36, p. 8-10]; *Loan v. Prudential Ins. Co. of Am.*, 370 F. App'x 592, 596-97 (6th Cir. 2010). In analyzing this test, Defendant relied solely on an in-house doctor to evaluate their initial denial of benefits to Plaintiffs and Plaintiffs' subsequent appeal, even after an in-house doctor "indicated that it might be worthwhile to consult a toxicology expert" to review the record. *Id*. The Sixth Circuit recognized the unreasonableness of Defendant's review when detailing the readily apparent conflict of interest an in-house doctor faces when

[1] Indeed, this Court agreed with Defendant's definition of the term "legal intoxication" in its Order of December 4, 2008. [Record No. 31].

evaluating these claims. [Record No. 36, p. 11-12], *Loan v. Prudential Ins. Co. of Am.*, 370 F. App'x 592, 598 (6th Cir. 2010). Thus, Defendant's "unreasonable" review, as determined by the Sixth Circuit, shows a high level of culpability on the part of Defendant rising to the level of bad faith.

**B. Defendant has the ability to satisfy an award of attorneys' fees.**

This factor, while carrying little weight, also militates in favor of granting Plaintiffs' motion for attorneys' fees. Defendant argues "the ability to satisfy an award . . . is not typically an important factor in the analysis [and] the second factor is 'weighed more for exclusionary than for inclusionary purposes.'" *Fujitsu Ten Corp. of Am. Emp. Benefit Plan – Ind. Emps. v. Unicare Life & Health Ins. Co.*, No. 06-11897, 2008 U.S. Dist. LEXIS 86671, at *19 (E.D. Mich. June 16, 2008) (quoting *Gribble v. Cigna Healthplan of Tenn., Inc.*, No. 93-6115, 1994 U.S. App. LEXIS 26805 (6th Cir. Sept. 20, 1994). This does not mean, however, that the Court should not consider it. *See Gaeth v. Hartford Life Ins. Co.*, 538 F.3d 524, 531 (6th Cir. 2008). Plaintiffs argue, and Defendant does not dispute, that the Defendant "is able to 'satisfy an award of attorney's [sic] fees' since they are a large, national insurance company." [Record No. 46-1, p. 4]. Thus, this factor, though deserving of less weight than the other factors, militates in favor of granting Plaintiffs' motion for attorneys' fees.

**C. The award of attorneys' fees would have a deterrent effect on other plan administrators under similar circumstances.**

The plan administrator's errors in reviewing Plaintiffs' benefits could easily happen again to another person in Plaintiffs' position, and this factor falls in favor of awarding Plaintiffs attorneys' fees. In evaluating this factor, the court must examine whether the facts "are not so unique that they fail to serve any deterrence value to other insurance companies under similar circumstances." *Gaeth v. Harford Life Ins. Co.*, 538 F.3d 524, 531 (6th Cir. 2008) (citation omitted). In doing so, the Sixth Circuit recognized the imposition of attorneys' fees would be appropriate to ensure that "a plan administrator should ensure that the opinions on which they rely to make their decisions to terminate are based on a thorough review of the administrative record." *Id.* at 531-32. Defendant argues that this factor should not weigh against Defendant simply made an "honest mistake" and has "more significance in a case where the defendant is highly culpable than in a case such as this one." *Foltice v. Guardsman Prod. Inc.*, 98 F.3d 933, 937 (6th Cir. 1996). As previously stated, however, Defendants have exhibited a high degree of culpability in their denial of benefits based on their failure to hire an outside doctor. *See supra* Part II.A.

In addition, this is the second time that the uncertainty surrounding the definition of "legal intoxication" in insurance

contracts has arisen in Kentucky insurance law. More than ten years ago, the Kentucky Supreme Court held that the term "legal intoxication" was ambiguous. *Healthwise of Kentucky, Ltd. v. Anglin*, 956 S.W.2d 213 (Ky. 1997). In doing so, the court adopted the definition that would provide the most potential for coverage to the client, namely the statutory definition used to find a person guilty of alcohol intoxication. *Id.* Thus, not only could this situation occur again, but indeed, it already has occurred before making this factor militate in favor of granting attorneys' fees to Plaintiffs.

**D. Plaintiffs did not seek to resolve significant legal questions regarding ERISA.**

Though this action has resulted in the resolution of the legal definition of the ambiguous term "legal intoxication" as stated in Kentucky insurance policies, Plaintiffs cannot argue that this was their intention from the outset. In their complaint, Plaintiffs make no such averments. [Record No. 1]. In fact, Plaintiffs do not argue that the Court should define "legal intoxication" according to Kentucky's public intoxication statute in their first Motion for Judgment [Record No. 26]. Rather, the argument makes its first appearance in Plaintiffs Reply [Record No. 30] to Defendant's Response to that Motion. As a result, Plaintiffs did not seek to resolve a significant legal question regarding ERISA and this factor weighs against granting Plaintiffs motion for attorneys' fees.

**E. The relative merits of the parties' positions favors Plaintiffs**

Plaintiffs' position in this matter, however, had greater merit than that of Defendant. As the Sixth Circuit held, "[t]his panel unanimously agrees that Prudential abused its discretion on the basis that the decedent was legally intoxicated without conducting a full and fair review." [Record No. 36, p. 12], *Loan v. Prudential Ins. Co. of Am.*, 370 F. App'x 592, 598 (6th Cir. 2010). Thus, the case did not turn solely on the definition of legal intoxication, which is arguably a closer call, but also Defendant's failure to seek independent doctors to conduct a full and fair review of the evidence pertaining to legal intoxication. [Record No. 36, p. 5-12], *Loan v. Prudential Ins. Co. of Am.*, 370 F. App'x 592, 595-99 (6th Cir. 2010). While Defendants argue that their position had merit since it was founded on the reports it sought from in-house doctors, it is this very process the Sixth Circuit held was an abuse of discretion. [Record No. 36, p. 12], *Loan v. Prudential Ins. Co. of Am.*, 370 F. App'x 592, 598 (6th Cir. 2010). Thus, this factor also leans in favor of granting Plaintiffs attorneys' fees and this Court shall grant Plaintiffs' motion for attorneys' fees under 29 U.S.C. § 1132(g).

**F. The Court shall apply the lodestar calculation to calculate reasonable attorneys' fees.**

As a result, Plaintiffs shall receive attorneys' fees in the amount of $23,903 payable to Stewart, Roelandt, Graigmyle and Emery

PLLC and $3,692.50 payable to Ed W. Tranter pursuant to 29 U.S.C. §1132(g)(1). It is well settled that the lodestar approach of multiplying the number of hours reasonably spent on litigation by a reasonable hourly rate is the method used to determine reasonable attorneys' fees. *Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401 (6th Cir. 1995)(citations omitted). These claimed hours, however, must not be "excessive, redundant and unnecessary [and those hours] should be excluded by the court in determining an appropriate award." *Lindberg v. UT Med. Group, Inc.*, No. 03-2543 B, 2006 U.S. Dist. LEXIS 1046, at *15-16 (W.D. Tenn. Jan. 6, 2006) (quoting *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998)). Plaintiffs carry the "burden of providing for the court's perusal a particularized billing record [though] all that is necessary is 'evidence supporting the hours worked and rates claimed.'" *Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1402 (6th Cir. 1995) (citations omitted) (holding that detailed billing invoices, affidavits pertaining to those invoices, and appropriate motions provided sufficient evidence necessary for an award of attorneys' fees).

Defendant does not dispute the reasonableness of the hourly rate stated in Plaintiffs' attorneys' affidavits but, rather,

raises three objections to the reasonableness of the amount of hours spent on the case. [Record No. 48, p. 5].

The Supreme Court has held:

> In the private sector, "billing judgment" is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority.

*Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (citation omitted). As a result, this Court must look to the "slip listings" and affidavit submitted by Plaintiffs to "distinguish 'raw [unbillable]' time from 'billable time.'" *Soler v. G & U, Inc.*, 658 F. Supp. 1093, 1096 (S.D.N.Y. 1987) (quoting *Ramos v. Lamm*, 713 F.2d 546, 553 (10th Cir. 1983)). These listings and affidavits show that Defendant was right to object. Regarding the slip listings from Stewart, Roelandt, Craigmyle & Emery, PLLC, Plaintiffs state in their affidavit that attorneys spent 219.95 hours on this litigation. [Record No. 46-2, p. 1]. However, Plaintiffs' submitted total fails to remove 106.45 unbillable hours, as referenced on their "slip listings." As Defendants have not objected to the rates submitted by Plaintiffs, the Court finds the following breakdown of the lodestar calculation appropriate:

| **Name** | **Total Hours** | **Unbillable Hours** | **Billable Hours** | **Rate** | **Lodestar** |
|---|---|---|---|---|---|
| **John Frith Stewart (lead attorney)** | 38.10 | 15.35 | 22.75 | $275 | $6,526.25 |

| **Mary M. McGuire (attorney)** | 93 | 27.9 | 65.1 | $200 | $13,020.00 |
|---|---|---|---|---|---|
| **Matthew P. Lynch (attorney)** | 14.5 | 0 | 14.5 | $195 | $2,827.50 |
| **Sarah P. Harris (attorney)** | .6 | 0 | .6 | $175 | $105.00 |
| **Cindy Bauer (paralegal)** | 13.5 | 2.95 | 10.55 | $135 | $1,424.25 |
| **Blake Nolan (law clerk)** | 60.25 | 60.25 | 0 | $65 | 0 |
| | | | | | |
| **Total:** | 219.95 | 106.45 | 113.5 | x | $23,903 |

Attorney Ed W. Tranter, has also submitted an affidavit with 21.1 hours of recorded time and an hourly fee of $175.00, to which Defendants have not objected to either the amount of hours or the fee. [Record No. 46-4]. This Court, therefore, shall award attorneys' fees in the amount of $23,903.00 to Stewart, Roelandt, Graigmyle and Emery PLLC and $3,692.50 to Ed W. Tranter. As to Plaintiffs' motion for costs, the Court shall deny it without prejudice as Plaintiffs have failed to submit an itemized bill of costs.[2] *See* 28 U.S.C. § 1290; LR 54.3 ("The prevailing party must file a Bill of Costs with the Clerk and serve a copy of the bill on each adverse party within thirty (30) days of entry of judgment.")

[2] Plaintiffs may submit Form AO 133 - Bill of Costs to fulfill this requirement.

## IV. The Court shall not award enhanced attorney's fees.

Plaintiffs have also made a motion for an enhancement of attorneys' fees from Defendant to cover the entirety of the contingency fee owed by Plaintiffs to their attorneys. [Record No. 51]. Plaintiffs have submitted to the Court the contingency contract entered into with attorneys Ed W. Tranter and John Frith Stewart in which "the client agrees to pay to the Attorney a fee of 40% of the recovery." [Record No. 51-2]. The Sixth Circuit has held, however, that "[t]here is a 'strong presumption' that [the] lodestar figure represents a reasonable fee." *Building Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview* Raceway, 46 F.3d 1392, 1401-02 (6th Cir. 1995) (citations omitted). Where the attorney obtains excellent results for his client, he is entitled to a full compensatory fee. *Isabel v. City of Memphis*, 404 F.3d 404, 416 (6th Cir. 2005)(citation omitted). Where the attorney achieves exceptional success, an enhanced award may be justified. *Hensley v. Eckerhart*, 416 U.S. 424, 435 (1983). Enhanced awards, however, are "both discretionary and rare, and the applicant bears the burden of proof of an exceptional result." *Johnanssen v. Dist. No. 1 - Pac. Coast Dist.*, 292 F.3d 159, 181 (4th Cir. 2002); *See also Elliott v. Metro. Life Ins. Co.*, No. 04-174-DLB, 2007 WL 4192001, at *5 (E.D. Ky. Nov. 13, 2007) (declining to give a fee award enhancement in an ERISA case solely on the basis that the Sixth Circuit rendered a published decision on appeal).

While Plaintiffs attorneys have achieved an excellent result for their client meriting a full compensatory fee, the case and result does not rise to the level necessary for an enhancement of that fee. Relevant factors to consider in determining whether an enhanced fee is appropriate include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Paschal v. Flagstar Bank*, 297 F.3d 431, 435 (6th Cir. 2002) (quoting *Blanchard v. Bergeron*, 489 U.S. 87, 91 n.5 (1989)). A positive result in a case that does not involve traditional discovery or a jury trial, however, is not exceptional. *Elliott*, 2007 WL 4192001 at *5. Furthermore, an enhancement based on contingency is not permitted in determining reasonable attorneys' fees as provided under statute since "an enhancement for contingency would likely duplicate in substantial part factors already subsumed in the lodestar [calculation]" *City of Burlington v. Dague*, 505 U.S. 557, 562-63 ("The risk of loss in a particular case (and, therefore, the attorney's contingent risk) is the

product of two factors: (1) the legal and factual merits of the claim, and (2) the difficulty of establishing those merits [which] is ordinarily reflected in the lodestar – either in the higher number of hours expended to overcome the difficulty, or in the higher hourly rate of the attorney skilled and experienced enough to do so.”). Plaintiffs’ argument, however, centers on the fact that they had a contingency fee agreement with their attorneys. [Record No. 49]. In addition, there was no discovery in the case nor was it presented before a jury. Thus, Plaintiffs have not shown that the result in their case was exceptional and the Court shall not grant Plaintiffs’ motion for an enhanced attorney’s fees award.

**V. CONCLUSION**

For the reasons set forth above,

**IT IS ORDERED** that Plaintiffs’ Motion for Attorney Fees [Record No. 46] and Plaintiffs’ Amended Motion for Attorney Fees [Record No. 51] are **GRANTED IN PART**, and **DENIED IN PART**.

This the 10th day of May, 2011.




**Signed By:**
***Joseph M. Hood***
**Senior U.S. District Judge**